IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Innovair Corporation,<br>Plaintiff,<br><br>v.<br><br>Factory Direct Sales and Consultant, Inc.,<br>Defendant.<br><br><br>Factory Direct Sales and Consultant, Inc.,<br>Third-Party Plaintiff,<br><br>v.<br><br>Innovair Corporation (Florida),<br>Third-Party Defendant.<br><br><br>Factory Direct Sales and Consultant, Inc.,<br>Counter-Claimant,<br><br>v.<br><br>Innovair Corporation,<br>Counter-Defendant. | Civil No. 23-1079 (GMM) |

## REPORT AND RECOMMENDATION

Pending before the Court is Factory Direct Sales and Consultant, Inc.'s ("FDSC") request for a preliminary injunction pursuant to the Puerto Rico Dealer's Act, 10 P.R. Laws Ann. §§ 278 *et seq.* ("Law 75"). Docket Nos. 8, 65. The matter was referred to the undersigned for a Report and Recommendation. Docket No. 57. For the reasons set forth below, the undersigned recommends that FDSC's request for preliminary injunctive relief be **DENIED**.

**I.    Background**

On February 20, 2023, Innovair Corporation Florida filed a complaint against FDSC seeking a declaration that FDSC is not an exclusive distributor for Innovair products in Puerto

Case 3:23-cv-01079-GMM-GLS   Document 117   Filed 07/30/24   Page 2 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

Rico subject to the protections of Law 75 and that FDSC is not a sales representative under Law 21, 10 P.R. Laws Ann. §§ 279-279h. Docket No. 1. On March 21, 2023, FDSC filed its answer to the complaint, a counterclaim, and third-party complaint against Innovair Solutions Canada, and a request for preliminary injunction. Docket No. 8. Innovair moved the Court to amend the complaint. Docket Nos. 52, 62. On January 4, 2024, FDSC answered the amended complaint, filed an amended counterclaim and third-party complaint, reiterating its request for preliminary injunction.[1] Docket No. 65 at p. 14. FDSC alleges that Innovair granted FDSC the exclusive distribution of Innovair products in Puerto Rico in the year 2012 (Docket No. 65 at p. 11 ¶¶12-13), that it developed the market for Innovair products in Puerto Rico, including by negotiating sales to Roger Electric (Docket No. 65 at p. 12 ¶¶17-19), that on or around June 2021, Innovair began to undermine, breach, and impair its exclusive distribution agreement with FDSC (Docket No. 65 at p. 14 ¶¶27-30), that on March 2022, Innovair began taking action to sell directly to Roger Electric without FDSC's intervention (Docket No. 65 at pp. 14-15 ¶¶33-35), that by June 2022, Innovair informed FDSC that it intended to sell directly to Roger Electric and would pay FDSC a 3% commission for those sales (Docket No. 65 at p. 15 ¶37), and that Innovair took other actions (namely, increasing the prices of the products, delaying shipment of orders, and refusing to dispatch orders) that impaired FDSC's rights of distribution (Docket No. 65 at pp. 16-17 ¶¶42-47).

FDSC asserted four (4) causes of action in the Amended Counterclaim— (1) preliminary injunction under Article 3A of Law 75, (2) damages for impairment under Law 75, (3) damages for termination under Law 75, and (4) attorneys' fees. FDSC moved the Court for injunctive relief requesting that the Court order Innovair to: (1) release and deliver all pending purchase orders placed and paid by FDSC, and to serve all other purchases that could be placed by FDSC, (2) refrain from selling directly in Puerto Rico (including to Roger Electric), (3) refrain from appointing a different distributor in Puerto Rico, and (4) refrain from changing any of the terms and conditions of the exclusive agreement between Innovair and FDSC. Docket Nos. 65 at p. 18; 65-1 at p. 15. Innovair opposed. Docket No. 70. The case was scheduled for an evidentiary hearing on the request for injunctive relief.

---

[1] The allegations in the Third-Party Complaint and request for injunctive relief against Innovair Solutions (Canada) at Docket No. 65-3 are the same as those in the Amended Counterclaim. The Court refers to Innovair Corporation Florida and Innovair Solutions Canada collectively as "Innovair."

Case 3:23-cv-01079-GMM-GLS   Document 117   Filed 07/30/24   Page 3 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

The parties submitted stipulated facts at Docket No. 79 ("Stipulated Facts"). A preliminary injunction hearing was held on February 21-23, 2024, and March 8, 2024. The Court heard the testimonies of FDSC's President Pedro Joaquín Padilla García ("Padilla"), Zélida Caballero ("Caballero"), Innovair's former President Julio Gómez ("Gómez"), and Innovair's Territory Manager Ernesto García ("García"). Documentary evidence was admitted. The parties submitted post-hearing briefs. Docket Nos. 104, 106. The following findings of fact are made solely for the purpose of making a recommendation as to FDSC's request for preliminary injunction. See José Santiago, Inc. v. Smithfield Packaged Meats Corp., 66 F.4th 329, 333 (1st Cir. 2023).

1. FDSC was incorporated in 2008. FDSC has been in the air conditioning business since 2012. Testimony of Padilla, Docket No. 97 ("Day 1 Tr.") at p. 19 lines 16-24. Testimony of Caballero, Docket No. 99 ("Day 3 Tr.") at p. 361 lines 4-5.

2. FDSC has ten (10) employees and a 7,000 square feet facility, which includes a showroom, office space, a warehouse to store equipment, and forklifts and power jacks. Testimony of Padilla, Day 1 Tr. at pp. 20 lines 23-25; 21 lines 5-6; 22 lines 8-11.

3. Innovair manufactures and distributes air conditioning equipment, parts, and accessories. Testimony of Padilla and Gómez. Day 1 Tr. at p. 33 lines 3-4; Day 3 Tr. at p. 465 lines 13-14.

4. In 2012, Innovair closed the two stores it had in Puerto Rico. Testimony of Padilla and Gómez. Day 1 Tr. at pp. 30 lines 21-23; 31 lines 1-2; Day 3 Tr. at pp. 469 lines 3-9; 470 lines 1-6.

5. In 2012, Padilla met with Gómez in Miami and sought the distribution of Innovair products in Puerto Rico. Testimony of Padilla. Day 1 Tr. at pp. 32 lines 22-24; 33 lines 17-25.

6. FDSC has been selling Innovair products in Puerto Rico since October 2012. The first purchases made by FDSC were made in cash (COD). Testimony of Padilla. Day 1 Tr. at p. 35 lines 3-6.

7. Innovair and FDSC did not execute a written distribution agreement. Stipulated Facts No. 7.

8. Up until June 2022, FDSC would set the sales price for the Innovair products it sold in Puerto Rico. Testimony of Gómez and Caballero. Day 3 Tr. at pp. 376 lines 7-12; 515-516; Joint Exhibit 1.

Case 3:23-cv-01079-GMM-GLS    Document 117    Filed 07/30/24    Page 4 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

9. Roger Electric became a client of FDSC in 2014. FDSC offered Roger Electric a credit line of approximately $50,000 for the purchase of electrical parts and products. Testimony of Padilla. Day 1 Tr. at pp. 113 lines 1-5, 127 lines 1-18. FDSC Exhibit 9.

10. In 2014, Caballero inquired about purchasing air conditioning units by containers from Innovair. Innovair directed Caballero to contact Padilla. Testimony of Caballero. Day 3 Tr. at pp. 361 lines 16-21; 371 lines 7-12; FDSC Exhibit 43.

11. FDSC participated in annual conventions held by the Puerto Rico Refrigeration Technicians where FDSC promoted the Innovair line. Testimony of Padilla and Caballero. Day 1 Tr. at p. 52 lines 3-13; Day 3 Tr. at pp. 423-24.

12. In 2015, Roger Electric opened a credit line with Innovair (through Euler Hermes) but continued to do business with Innovair through FDSC. Testimony of Padilla. Day 1 Tr. at pp. 116 lines 16-24; 117 lines 3-8, 127 lines 6-16. FDSC Exhibit 10.

13. Euler Hermes is the company that offered credit lines to Innovair clients. Day 1 Tr. at pp. 47 lines 14-21; 129 lines 7-17. Day 2 Tr. at p. 184 lines 11-13.

14. By 2015, Caballero, through Clean Air Contractors Corporation ("Clean Air"), agreed to purchase containers of Innovair products from FDSC. The purchase orders were placed directly with FDSC. Testimony of Caballero. Day 3 Tr. at p. 376 lines 6-12; Joint Exhibits 5-6.

15. Subsequently, Caballero and Clean Air's owner travelled to Florida to meet Innovair officials and visit its facilities. Testimony of Caballero. Day 3 Tr. at p. 378 lines 13-16.

16. After the meetings in Florida, Clean Air stopped purchasing Innovair products through FDSC and began to buy directly from Innovair. Testimony of Caballero. Day 3 Tr. at p. 380 lines 6-17.

17. In 2016, Clean Air started selling Innovair products in its stores in Puerto Rico. FDSC was aware that Innovair was selling directly to Clean Air. Testimony of Padilla and Caballero. Docket No. 98 ("Day 2 Tr.") at pp. 210 lines 6-25; 211 lines 1-10. Day 3 Tr. at pp. 423-24.

18. On October 5, 2016, Gómez reaffirmed Innovair's decision to sell directly to Clean Air in an email sent to Caballero: "[t]he decision to sell to [Padilla]

Case 3:23-cv-01079-GMM-GLS    Document 117    Filed 07/30/24    Page 5 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

        and support Clean Air has been made and is not going to change. Ernesto [García] is going to try to calm [Padilla] down and explain to him that this attitude could cost him the distribution[.]" Joint Exhibit 11.

19. From 2016 through 2022, Clean Air sold Innovair products purchased directly from Innovair. Testimony of Caballero. Day 3 Tr. at p. 395 lines 7-18.

20. FDSC did not make a formal claim or initiate legal action against Innovair after learning that Innovair was selling directly to Clean Air. Testimony of Padilla. Day 2 Tr. at pp. 210 lines 6-25; 211 lines 1-10.

21. The first time FDSC sold Innovair air conditioning units to Roger Electric was between 2018 and 2019. Testimony of Padilla. Day 1 Tr. at pp. 115-116; Joint Exhibits 2-4.

22. Roger Electric used its credit line with Euler Hermes to purchase the products from Innovair. The transactions were made through FDSC. FDSC would establish the sales price of the products to be bought by Roger Electric, FDSC would complete the purchase order for Roger Electric, and FDSC would receive compensation from the sales made to Roger Electric. The products were shipped directly from Innovair to Roger Electric. Day 2 Tr. at pp. 249 lines 20-25; 250 lines 1-19; 320 lines 24-24; 321 lines 1-3. This is called the "direct sales" model, which was implemented to allow FDSC to complete sales of Innovair products to its clients without having to exhaust its line of credit, using the client's line of credit instead. Joint Exhibits 9, 12-13, 16; Day 1 Tr. at pp. 24 lines 11-25; 25 lines 1-17; 103 lines 12-25; 104 lines 1-23. Day 2 Tr. at pp. 319 lines 14-25; 320 lines 17-24.

23. FDSC's compensation would vary depending on the type of product and the sales price set by FDSC. Day 2 Tr. at p. 234-36; Day 4 Tr. at pp. 78 lines 21-25; 79-80; 87-89.

24. At some point between March and May 2022, FDSC became aware that Innovair was trying to sell to Roger Electric without the intervention of FDSC. Day 1 Tr. at p. 117 lines 16-25; Day 2 Tr. at pp. 224-26.

25. On May 24, 2022, FDSC sent a letter to Innovair notifying that it was aware of Innovair's dealings with Roger Electric. Docket No. 65 at ¶ 35.

26. On June 1, 2022, FDSC sent a proposed distribution agreement to Innovair. Joint Exhibit 8; Docket No. 65 at ¶ 36.

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

27. On June 8, 2022, Innovair rejected FDSC's claims of exclusivity and informed FDSC that it would receive a fixed commission of 3% for the sales to Roger Electric. Joint Exhibit 9.

28. On June 21, 2022, FDSC sent a cease-and-desist letter to Innovair. Testimony of Padilla. Day 2 Tr. at p. 229 lines 18-19; Joint Exhibit 7.

## II. Preliminary Injunction Under Law 75

Law 75 governs the relationship between principals and distributors who market their products in Puerto Rico. Nilo Watch Parts. Inc. v. Rado Watch Co., Ltd., 2023 WL 5814264, at *8 (D.P.R. Sept. 7, 2023). It was adopted to protect Puerto Rico's distributors "from the harm caused when a supplier arbitrarily terminates a distributorship once the dealer has created a favorable market for the supplier's products." E. Moran, Inc. v. Tomgal, LLC, 2023 WL 3194682, at *3 (D.P.R. May 2, 2023), report and recommendation adopted, 2023 WL 630700 (D.P.R. Sept. 28, 2023) (quoting Freightliner, L.L.C. v. Puerto Rick Truck Sales, Inc., 399 F.Supp.2d 57, 78 (D.P.R. Oct. 24, 2005)); R.W. Int'l Corp. v. Welch Food, Inc., 13 F.3d 478, 482 (1st Cir. 1994). Once a distributor has created a favorable market for the principal's products or service, the principal cannot end the relationship except for just cause. P.R. Laws Ann. tit. 10 § 278(a); Nilo Watch Parts, 2023 WL 5814264, at *9. Therefore, "once a dealer demonstrates that its principal unilaterally terminated their contract, the principal must carry the burden of persuasion on the factual elements of the 'just cause' showing." R.W. Int'l Corp., 88 F.3d at 52.

The Court may grant a preliminary injunction ordering the parties to continue their distribution relationship pending litigation. Id.; P.R. Laws Ann. tit. 10 § 278b-1 ("the court may grant […] any provisional remedy […] ordering any of the parties, or both, to continue, in all its terms, the relation established by the dealer's contract, and/or abstain from performing any act or any omission in prejudice thereof."); José Santiago, 66 F.4th at 337. The moving party has the burden of showing why injunctive relief should be granted. Freightliner, 399 F.Supp.2d at 70-71. A preliminary injunction under Law 75 "is not necessarily tied to a showing of irreparable injury or to a probability of success in the case on the merits, but rather to the policies of [Law 75] in promoting the continuation of dealership agreements and the strict adherence to the provisions of such agreements." Waterproofing Sys., Inc. v. Hydro-Stop, Inc., 440 F.3d 24, 33 (1st Cir. 2006) (citations omitted). As such, although the Court considers the four factors traditionally examined

Case 3:23-cv-01079-GMM-GLS    Document 117    Filed 07/30/24    Page 7 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

in evaluating a request for injunctive relief— (1) the movant's likelihood of success, (2) irreparable harm, (3) balance of the equities and the interests of the parties, and (4) the effect on the public interest— the Court is also tasked with examining the interplay between those factors and the provisions of Law 75. Nilo Watch Parts, 2023 WL 5814264, at *9; Freightliner, 399 F.Supp.2d at 72. The Court thus considers the public policy fostered by Act 75. Nilo Watch Parts, 2023 WL 5814264, at *9; E. Moran, 2023 WL 3194682, at *4.

### III. Analysis

As a threshold matter, the undersigned must decide whether FDSC's request for injunctive relief is barred by application of the doctrine of laches. The doctrine of laches bars claims asserted after an inexcusable delay. Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 480 (1st Cir. 2009). For laches to apply, the Court must evaluate whether (1) the party was not diligent in pursuing its claim, and (2) whether the movant suffered prejudice due to the movant's lack of diligence. Museum of Fine Arts, Bos. v. Seger-Tomschitaz, 623 F.3d 1, 10 n.9 (1st Cir. 2010); Vaquería Tres Monjitas, 587 F.3d at 481. Laches may apply to a request for injunctive relief under Law 75. Systema de P.R., Inc. v. Interface Int'l, 23 P.R. Offic. Trans. 347 (1989). The burden is on the party asserting the defense of laches. Molinelli-Freytes v. University of Puerto Rico, 2010 WL 11545787, at *4 (D.P.R. Mar. 12, 2010); Olivia v. Ramírez, 2007 WL 2436305, at *2 (D.P.R. Aug. 21, 2007). The analysis is fact specific. Molinelli-Freytes, 2010 WL 11545787, at *4.

Innovair contends that FDSC's request for injunctive relief is barred by the doctrine of laches. Docket Nos. 70, 104. Innovair argues that, despite knowing since March 2022 that Innovair was selling directly to Roger Electric, it waited until March 2023 to seek injunctive relief. And that, even though FDSC threatened with legal action on June 21, 2022 (Joint Exhibit 7; Docket No. 65-3), it did not initiate action but in response to Innovair's request for declaratory judgment. FDSC offered no substantive response.

There is no question that what prompted these legal proceedings was the parties' disagreement as to the sales to Roger Electric. It is uncontested that FDSC learned of Innovair's intent to deal directly with Roger Electric no later than May 24, 2022. See Docket Nos. 65 at pp. 14-15; 98 at pp. 291-92. Indeed, in response to a letter from FDSC on June 1, 2022 (Joint Exhibit 8), Innovair unequivocally informed FDSC that it intended to continue selling directly to Roger Electric. Joint Exhibit 9. Innovair also informed FDSC that it would pay FDSC a fixed commission of 3% on all Roger Electric orders. Id. On June 21, 2022, FDSC sent Innovair a letter demanding

Case 3:23-cv-01079-GMM-GLS    Document 117    Filed 07/30/24    Page 8 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

that Innovair cease and desist impairing its distribution of Innovair products in Puerto Rico and threatened with legal action under Law 75. Joint Exhibit 7. Innovair continued selling its products directly to Roger Electric. FDSC did not seek Court intervention under Law 75. Docket No. 98 at pp. 291-92. It was not until March 21, 2023, that FDSC moved the Court for injunctive relief. Docket Nos. 8; 98 at pp. 292-93. FDSC has not explained why it waited ten (10) months, and only in response to Innovair's legal action, to seek injunctive relief. Olivia, 2007 WL 2436305, at *3 (a delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable harm."). Neither has FDSC alleged that it was pursuing its claims through alternate channels. See Molinelli-Freytes, 2010 WL 11545787, at *5 (finding no delay when plaintiffs sought redress through alternative channels offered to them); Vaquería Tres Monjitas, 587 F.3d at 481 (unwise and inequitable to punish plaintiffs for attempting to settle their grievances through administrative remedies and negotiations before filing a claim). Notwithstanding the foregoing, a request for injunctive relief is not barred by laches unless the movant establishes that the delay caused it prejudice. This Innovair has not done. Innovair perfunctorily argues that, given FDSC's inaction, it understood that there was no impediment to grow and develop its relationship with Roger Electric. Docket Nos. 70 at pp. 19-20; 104 at pp. 9-10. But there has been no concrete argument or evidence of prejudice. Therefore, even though FDSC was not diligent in pursuing its request for injunctive relief, I cannot rest on the doctrine of laches to recommend the denial of FDSC's request for injunctive relief. I proceed on the four factors of the preliminary injunction inquiry.

    1.    **Likelihood of Success**

The allegations in FDSC's amended counterclaim and at least two of the requests in its motion for preliminary injunction (that Innovair (1) refrain from selling directly to any client in Puerto Rico, including and starting by Roger Electric, and direct any such sales to FDSC, and (2) refrain from appointing a different distributor in Puerto Rico) rest on the premise that FDSC is an exclusive distributor of Innovair. Innovair and FDSC never executed a written distribution agreement. Stipulated Facts No. 7. Both parties agree that in 2012 Padilla met with Gómez and verbally agreed for FDSC to distribute Innovair products in Puerto Rico. Day 1 Tr. at pp. 44 lines 16-18; 45-46; 47 lines 20-21; Day 4 Tr. at p. 83 lines 16-24. FDSC sustains that the verbal agreement set forth an exclusivity. Innovair counters that it does not. Joint Exhibit Nos. 8-9; Docket

Case 3:23-cv-01079-GMM-GLS   Document 117   Filed 07/30/24   Page 9 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

Nos. 65 at ¶¶ 12-13; Day 1 Tr. at pp. 48 lines 24-25, 49 lines 1-4; Day 3 Tr. at p. 491 lines 10-16. I look to the parties' course of dealings. José Santiago, Inc., 66 F.4th at 339.

The parties' dealings since 2016 tell the undersigned that, even if an exclusivity was intended and existed at the inception of the relationship between Innovair and FDSC, any exclusivity concluded in 2016. The undisputed evidence established that from 2016 until 2022 at least one other air conditioning company— Clean Air— was allowed to purchase products directly from Innovair and sell those products in Puerto Rico. These sales were done without the intervention of FDSC. FDSC knew that Clean Air was purchasing products from Innovair and selling those products in Puerto Rico since 2016. Yet despite an initial protest, FDSC took no action. Docket Nos. 84-1; 106 at pp. 6, 10; Day 2 Tr. at pp. 278 lines 11-19, 279 lines 24-25, 280 lines 1-3 and 25, 281 lines 1-6, 283 lines 4-10, 284 lines 3-5 and 13-15, 287 lines 9-22.

A claim under Law 75 must be brought within three (3) years of the termination or the impairment of a dealer's contractual rights. P.R. Laws Ann. tit. 10 § 278d. Any claim by FDSC for Innovair's violation of its right of exclusivity on account of Clean Air's purchases and sales of Innovair products in Puerto Rico would now be time barred.[2] See Basic Controlex Corp., Inc. v. Klockner Moeller Corp., 202 F.3d 450 (1st Cir. 2000); Trafon Group, Inc. v. Butterball, LLC, 820 F.3d 490, 494 (1st Cir. 2016). Moreover, First Circuit case law is clear that because FDSC failed to protect its purported exclusivity when Innovair began selling directly to Clean Air, FDSC's claim of exclusivity now (as it relates to sales to Roger Electric) would also be time barred. See Medina & Medina, Inc. v. Hormel Foods Corp., 2013 WL 12170571, at *13 (D.P.R. Sept. 30, 2013) ("[O]nce a distributor allows one claim for a breach of the exclusivity provision to become time barred, any further claim for a violation of the same would also be time barred.") (*affirmed* in Medina & Medina, Inc. v. Hormel Foods Corp., 840 F.3d 26, 48-49 (1st Cir. 2016)). It follows that FSDC is not likely to succeed on its claim of exclusivity.

Nonetheless, we consider all FDSC's impairment claims as a non-exclusive distributor.[3] Medina & Medina, 840 F.3d at 41-42 (Law 75 protects exclusive and non-exclusive distributors);

---

[2]    FDSC argued that a distinction should be drawn because Clean Air was a retailer of air conditioning units, not a wholesaler like FDSC. But this is of no consequence. The crucial issue for exclusivity is that Innovair was selling directly in Puerto Rico not through FDSC.

[3]    The only claim to consider at this juncture is that of impairment. FDSC's causes of action in the amended counterclaim include one for preliminary injunction, one for attorneys' fees, and another for termination

Case 3:23-cv-01079-GMM-GLS   Document 117   Filed 07/30/24   Page 10 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc., 96 F.3d 10, 14 (1st Cir. 1996). Although Law 75 protects exclusive and non-exclusive distributors, it does not transform non-exclusive contracts into exclusive contracts. E. Moran, 2023 WL 3194682, at *4. To prevail in an impairment claim under Law 75, FDSC would have to establish: (1) that it is a dealer and (2) its distribution rights have been impaired. Id. at *4. A dealer is a "[p]erson actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service." P.R. Laws Ann. tit. 10 § 278(a). Following the Supreme Court of Puerto Rico's guidance in Roberco, Inc. v. Oxford Industries, Inc., 22 P.R. Offic. Trans. 111 (1988), the First Circuit established several factors that serve as guideposts to determine whether a claimant is a dealer under Law 75: "promotion of the product, keeping an inventory, fixing prices, deliver and billing responsibilities, authority to extend credit, advertising campaigns, assumption of risk, purchasing the product, maintaining facilities, and offering product-related services to clients." Re-Ace, Inc. v. Wheeled Coach Indus., Inc., 363 F.3d 51, 55 (1st Cir. 2004) (quoting Triangle Trading Co. v. Robroy Indus., 200 F.3d 1, 4-5 (1st Cir. 1999)). See also José Santiago, 66 F.4th at 338 (applying the factors); Beatty Caribbean, Inc. v. Nova Chemicals, Inc., 2009 WL 2151303, at *10 (D.P.R. July 16, 2009); Madelux Intern., Inc. v. Barama Co. Ltd., 364 F.Supp.2d 68, 73 (D.P.R. February 15, 2005).

      The evidence submitted by the parties establishes the following. FDSC began distributing Innovair products in 2012. Since that time and until it implemented the "direct sales" model, it appears that FDSC undertook the activities that are typically associated with a Law 75 distributor. The "direct sales" model changed the equation, at least as to Roger Electric. FDSC retained the task of promoting the product, developing the relationship with the client, and fixing the prices. Day 1 Tr. at p. 118 lines 5-22. No doubt it also participated in putting together the purchase orders, delivery of those purchase orders to Innovair, and coordinating payment from Roger Electric to Innovair for those purchase orders. Day 1 Tr. at p. 119 lines 8-16. But as far as Roger Electric is concerned, FDSC relinquished the responsibility of keeping inventory, delivering the product, and extending credit. FDSC stopped purchasing the product and assuming the financial risks of those sales. Day 2 Tr. at p. 321 lines 20-25; 322 line 1. And freight charges for Innovair shipments from

---

under Law 75. The Court dismissed without prejudice FDSC's cause of action for termination. See Docket No. 116. The causes of action for injunctive relief and attorneys' fees are only viable if there was an impairment.

Case 3:23-cv-01079-GMM-GLS    Document 117    Filed 07/30/24    Page 11 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

Asia were covered by Roger Electric. Day 1 Tr. at p. 156 lines 7-11, 24-25; 157 lines 1-3. Day 2 Tr. at pp. 326 lines 21-25, 327 lines 1-13. While it appears that at times FDSC assisted Roger Electric in honoring warranties for Innovair air conditioning units, the evidence tends to establish that, once Roger Electric placed the orders through the "direct sales" model it also assumed the responsibility of honoring those warranties. Day 1 Tr. at p. 91 lines 17-25; Day 2 Tr. at pp. 178 lines 20-25, 179-181, 182 lines 1-9; Day 4 Tr. at p. 111 lines 1-13.

In sum, even though FDSC did not assume the financial, delivery, or storing risks of those sales to Roger Electric, it continued to be responsible for developing the market (advertisement, promotion and development of a client base) and was given the freedom to control its margins (it would set the price for each product to be purchased by Roger Electric and earn the difference between Innovair's price and the amounts paid by Roger Electric for each product). Day 1 Tr. at pp. 88 lines 8-11, 97 lines 22-25, 98 lines 1-9, 103-105, 118 lines 8-13, 140 lines 22-25, 141 lines 1-2. Furthermore, while less developed during the hearing, FDSC did retain its traditional distributor undertakings for other clients in Puerto Rico. As such, FDSC may be able to establish at least *prima facie* that it is a dealer for Innovair products in Puerto Rico. See Re-Ace, Inc., 363 F.3d at 1; Beatty Caribbean, 2009 WL 2151303.

Whether FDSC is likely to establish an impairment depends on the specific terms of the agreement with Innovair. See Medina & Medina, 840 F.3d at 41; Irvine v. Murad Skin Research Labs., Inc., 194 F.3d 313, 318 (1st Cir. 1999) (protection afforded distributors under Law 75 is "circumscribed by those rights acquired under the agreement regulating their business relationship."); Vulcan Tools of P.R. v. Makita USA, Inc., 23 F.3d 564, 569 (1st Cir. 1994) ("The question whether there has been a 'detriment' to the existing relationship between supplier and dealer is just another way of asking whether the terms of the contract existing between the parties have been impaired."); Nike Int'l, Ltd. v. Athletic Sales, Inc., 689 F.Supp. 1235, 1238 (D.P.R. 1988) (Law 75 should not be interpreted to create a "safe-haven for dealers to avoid the express terms of the contracts to which they willingly subscribed"). FDSC avers that Innovair impaired its distribution rights when it delayed the delivery of orders, failed to dispatch orders placed in 2023, increased the prices of Innovair products, and changed the terms of FDSC's compensation. Docket Nos. 65 at pp. 14-16; 65-1 at pp. 2-3.

Case 3:23-cv-01079-GMM-GLS   Document 117   Filed 07/30/24   Page 12 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

### a. Delay in Orders

There is a rebuttable presumption of impairment whenever a principal unjustifiably fails to fulfill an order. P.R. Laws Ann. tit. 10 § 278a-1(b)(3); E. Moran, 2023 WL 31944682, at *5. When an impairment has been established, Law 75 requires the Court to consider "the likely presence or absence of 'just cause' as part of the likelihood of success on the merits." Freightliner, 399 F.Supp.2d at 72. Just cause is defined in Law 75 as the (1) "[n]onperformance of any of the essential obligations of the dealer's contract, on the part of the dealer" or (2) "any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service." P.R. Laws Ann. tit. 10 § 278(d). A principal's own circumstances may justify an impairment or termination of a distribution agreement. E. Moran, 2023 WL 31944682, at *5.

According to the testimony of Padilla, in 2021 the orders placed by FDSC began to take longer to get dispatched. Indeed, on March 23, 2022, FDSC inquired as to the status of "pending purchase orders" dating back to June 31, 2021. FDSC Exhibit 37. Innovair's response did not come until May 4, 2022, when it explained that FDSC's credit line with Euler Hermes had been "withdrawn" as of February 2022 and suggested that FDSC prepay all new orders. Id. Innovair also asked FDSC to resend the purchase orders, which FDSC did. Id. There is no evidence as to whether FDSC's credit line was restored, if FDSC opted to pay in cash, or whether there were additional unjustified delays in fulfilling purchase orders. The testimony of Padilla was that there are currently no purchase orders pending to be dispatched. Day 2 Tr. at p. 302 lines 10-11. As such, even though there was no apparent justification for the delays in fulfilling certain purchase orders in the years 2021 and 2022, there is no evidence that any such delays continue to impair FDSC's distribution rights.[4] FDSC is unlikely to succeed on this claim.

### b. Purchase Orders 509 and 510

FDSC claims that Innovair impaired its distribution rights when it failed to fulfill purchase orders 509 and 510 in February and March of 2023, respectively. Day 2 Tr. at p. 244 lines 10-16. Padilla admitted that purchase order 509 was eventually dispatched. Day 2 Tr. at pp. 245 lines 6-12, 298 lines 4-19; Day 4 Tr. at p. 56 lines 11-21. As to purchase order 510 for air conditioning units, the testimony elicited during the hearing established that it was not dispatched because the

---

[4] FDSC placed at least two (2) additional orders in the year 2022. Innovair Exhibit 3; Joint Exhibit X; Day 4 Tr. at p. 56 lines 3-4. There is no evidence that those orders were delayed.

Case 3:23-cv-01079-GMM-GLS   Document 117   Filed 07/30/24   Page 13 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

federal government changed efficiency requirements for mini splits in January 2023 and Innovair was impeded from selling the air conditioning units requested by FDSC. Docket Nos. 104-2, 106-1 at pp. 57-60. FDSC acknowledged that the energy efficiency standard rules issued by the Department of Energy were amended on January 1, 2023. Day 2 Tr. at p. 300. Innovair offered alternate products for purchase, which were more expensive than the units initially ordered by FDSC. FDSC did not respond and Innovair discarded the order. Day 4 Tr. at p. 103 lines 18-23. FDSC placed no orders after March 2023. Day 2 Tr. at p. 302 lines 3-11. The reason for FDSC's decision to stop purchasing products is unclear. FDSC did not establish whether it stopped placing orders due to the purported delays in shipments or to price increases. Padilla testified that he did not know whether Innovair was willing to sell its products to FDSC. Day 2 Tr. at p. 302; Day 4 Tr. at p. 60 lines 1-23. FDSC is unlikely to succeed on this claim.

### c.     Price Increases

The evidence pertaining to the increase in Innovair prices is murky. FDSC failed to pinpoint the exact month and year of the unexpected increase in Innovair prices and how this increase impacted its ability to purchase Innovair products. FDSC offered a series of alternate dates in which the price increase affected its distribution rights. For instance, (1) "Innovair's unexcepted and sudden increase of prices since June 2021 has ma[d]e effectively impossible for FDSC to continue buying Innovair air conditioning units and other equipment." Docket No. 65-1 at p. 13; (2) "[T]he last time that FDSC was able to sell Innovair products to Roger Electric was in May 2022, as a result of Innovair's price increase[.]" Docket No. 65-1 at p. 5; (3) "[A]t the time [June 2022] [Innovair] just start sending quotations with ridiculous prices." Day 2 Tr. at p. 238 lines 6-13; and (4) order placed on October 11, 2022, had higher prices than an order placed the month before. Day 2 Tr. at pp. 239-241; Joint Exhibit 10. While there is some evidence that FDSC struggled to keep purchasing because of the increase in prices, limiting its purchases to parts and replacements to cover warranties (Day 2 Tr. at pp. 238 lines 6-17, 241 lines 22-25; Docket No. 65-1 at p. 4; Day 4 Tr. at p. 60 lines 1-15), Innovair presented testimony that its prices increased as a result of the market's supply and demand during the COVID-19 pandemic. Day 4 Tr. at pp. 50-53. FDSC did not establish that Innovair price increases applied to FDSC only or that those higher prices were not offered to other Innovair distributors. Day 2 Tr. at pp. 305 lines 17-25, 306 lines 1-25, 307 lines 1-2. FDSC is unlikely to succeed on this claim.

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

### d. Compensation Structure

FDSC argues that Innovair impaired its distribution rights by conditioning FDSC's orders to its acceptance of a 3% commission on the sales to Roger Electric. The evidence established that historically FDSC was compensated for all sales made to Roger Electric. Day 4 Tr. at pp. 80 lines 15-23, 88 lines 7-11, 23-25, 94 lines 15-25. The compensation varied depending on the product and the sales price, which was set by FDSC. Day 4 Tr. at pp. 78-81. By being allowed to set the sales price, FDSC could control its profit margins and FDSC's margins typically exceeded the 3% commission offered by Innovair in 2022. Id. This changed when Innovair decided to sell to Roger Electric without FDSC's intervention. Day 4 Tr. at p. 94 lines 21-25. Innovair offered a fixed commission of 3% on the sales made by Innovair to Roger Electric, which FDSC did not accept. Day 2 Tr. at p. 234 lines 11-17; Day 4 Tr. at p. 80 lines 5-13; Joint Exhibit 9. Innovair also conditioned pending purchase orders on FDSC's acceptance. Docket No. 65-1 at pp. 4-15; Day 2 Tr. at pp. 237-238; FDSC Exhibit 39. On all accounts, the impasse on FDSC's compensation structure is unresolved. And there is no dispute that Innovair sold (and continues to sell) to Roger Electric directly— undoubtedly FDSC's biggest client— without FDSC's intervention and without any compensation to FDSC. Day 4 Tr. at pp. 41 lines 7-15, 42 lines 19-22, 94 lines 15-25, 95 lines 1-9; Docket No. 106 at p. 18. This is contrary to the parties' course of dealings since 2014 and FDSC could succeed on this front. See e.g., Beatty Caribbean, Inc., 2009 WL 2151303, at * 14 (defendant impaired the distribution relationship when it unilaterally reduced the commission); see also Medina & Medina, 2013 WL 12170571, at *15 (non-exclusive distributor's rights could be impaired when principal sells directly to dealer's client a product developed by the dealer) (*reversed on different grounds* in Medina & Medina, 840 F.3d at n.17 (recognizing the theory of liability developed by the lower court but declining to address its merits)).

### 2. Irreparable Harm

"[I]rreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." Prime Wholesalers, Inc. v. Fields Motorcars of Fla., Inc., 2009 WL 2612519, 12 (D.P.R. Aug. 17, 2009) (quoting Charlesbank Equity Fund II Ltd. v. Blinds to Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004)). "The burden is on the movant to demonstrate that the denial of preliminary injunctive relief is likely to cause irreparable harm and such showing must be 'grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store.'" Id. (quoting Alina & A Tours, Inc. v. Royal Caribbean

Case 3:23-cv-01079-GMM-GLS    Document 117    Filed 07/30/24    Page 15 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

Cruises, Ltd., 2006 WL 897975, at *6 (D.P.R. March 31, 2006)). The potential of future adequate compensation or relief weighs against finding irreparable harm. Sampson v. Murray, 415 U.S. 61, 90 (1974).

FDSC argues that it will suffer irreparable harm absent injunctive relief due to losses in sales and loss of credibility as a distributor in Puerto Rico. Docket Nos. 65 at pp. 19-20; 65-1 at pp. 13-14. But FDSC's losses in sales (FDSC claims that it has lost over $2,500,000 in sales) are economic in nature and can be redressed with a monetary award. Docket Nos. 65-1 at p. 13; 106 at p. 23; Day 2 Tr. at p. 249 lines 3-8 (FDSC lost sales and revenue); see E. Moran, 2023 WL 3194682, at *7; Nilo Watch Parts, 2023 WL 5814264, at *11-12; Beatty Caribbean, 2009 WL 2151303, at *16. Further, although FDSC has not been selling Innovair products since 2023, it continues to operate and sell other brands. See Prime Wholesalers, 2009 WL 2612519, at * 12 (no irreparable harm when distributor claimed that ninety percent of its business was derived from the products of its principal because economic damages, including lost sales and profits, may be compensated with a monetary award). FDSC has not submitted additional purchase orders to Innovair (Day 2 Tr. at p. 302 lines 3-11) and Innovair is willing and able to fulfill any purchase orders from FDSC (Day 4 Tr. p. 60 lines 1-23).

FDSC claims that absent injunctive relief it would suffer damages to its reputation because it would be unable to serve the warranties for Innovair products. But there is conflicting evidence as to who is responsible for servicing warranties. While Padilla testified that FDSC served the warranties of products sold to Roger Electric (Day 1 Tr. at p. 91 lines 17-25; Day 2 Tr. at pp. 178 lines 20-25, 179-181, 182 lines 1-9), Innovair testified that the warranties for products sold to Roger Electric through FDSC's direct sales model and directly from Innovair were Roger Electric's responsibility (Day 4 Tr. at p. 111 lines 1-13). And in any event, there is nothing preventing FDSC from placing orders to purchase air conditioning products from Innovair, including any parts or accessories needed to serve outstanding warranties.

Important to the irreparable harm analysis is the fact that FDSC waited almost a year before seeking injunctive relief. It is difficult to conclude that FDSC will suffer irreparable harm when FDSC did not demonstrate a sense of urgency after the purported impairments, seeking injunctive relief only after being brought to Court by Innovair. Olivia, 2007 WL 2436305, at *3. See also Freightliner, 399 F.Supp.2d at 77 (the movant waited almost four months after the case was filed to request injunctive relief, which demonstrated that the movant "lacked any urgency" or

Case 3:23-cv-01079-GMM-GLS    Document 117    Filed 07/30/24    Page 16 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

irreparable harm); Systema, 23 P.R. Offic. Trans. 347 (fifteen-month delay in filing suit and additional three months to serve summons demonstrated a lack of urgency; injunctive relief denied); Prime Wholesalers, Inc. Valmor Prods. Co. v. Standard Prods. Corp., 464 F.2d 200, 204 (1st Cir. 1972) (discussing Systema). This factor weighs against the need for injunctive relief.

### 3. Balance of the Equities

The balance of the equities weighs the hardship for the moving party if injunctive relief is not granted against the non-movant's hardship if injunctive relief is granted. Beatty Caribbean, 2009 WL 2151303, at *16. FDSC requests that Innovair release and deliver all pending purchase orders placed and paid, fulfill purchase orders that may be placed during the pendency of this litigation, and refrain from changing the terms and conditions of the distribution agreement with Innovair. Docket No. 65-1. As discussed, there are currently no pending purchase orders, and the price increases were likely the result of the market's supply and demand during the COVID pandemic and did not affect FDSC alone. The only changes to terms and conditions at issue here are FDSC's claimed exclusivity and the compensation of FDSC on sales to Roger Electric.

I have already rejected the claimed exclusivity. As such, if the sought injunctive relief were not issued— FDSC would have to accept the 3% commission on Roger Electric sales rather than being able to set the prices of the products sold to Roger Electric and earn a larger margin on those sales— FDSC's harm would be strictly economic and could be easily calculated at the conclusion of the case. FDSC's delay in seeking injunctive relief casts shadow as to the degree of hardship claimed. If Innovair were ordered to honor FDSC's historical compensation structure (and not offer Roger Electric its own prices), Innovair's sales to Roger Electric would depend on FDSC's price decisions. A decision of FDSC to raise the prices offered to Roger Electric would necessarily impact Innovair's ability to compete with other brands available to Roger Electric. It would also— at least as it pertains to Roger Electric— effectively impose an exclusivity on Innovair. The balance of the equities weighs against FDSC. See Beatty Caribbean, Inc., 2009 WL 2151303, at *17 (balance of the equities did not favor the movant when movant could recover difference in commissions owed when it prevailed on the merits).

### 4. Public Policy of Law 75

Law 75 was enacted to protect the interests of distributors operating in Puerto Rico "from the harm caused when a [principal] arbitrarily terminates [and/or impairs] a distributorship once the dealer has created a favorable market for the [principal]'s product," thus frustrating the

Case 3:23-cv-01079-GMM-GLS   Document 117   Filed 07/30/24   Page 17 of 18

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

legitimate expectations and interests of those who have excelled in carrying their responsibilities. Beatty Caribbean, 2009 WL 2151303, at *17 (quoting R.W. Int'l Corp., 13 F.3d at 482). See also Nilo Watch Parts, 2023 WL 5814264, at *13; Re-Ace, Inc. v. Wheeled Coach Indus. Inc., 270 F.Supp.2d 223, 230 (D.P.R. June 24, 2003).

FDSC generally argues that if a preliminary injunction is not issued Innovair will continue to abuse its power and that the public will be prejudiced by FDSC's inability to sell Innovair products. Docket Nos. 65-1 at p. 15; 106 at p. 24. Innovair warns that Law 75 cannot be used to turn FDSC's non-exclusive distribution agreement into an exclusive one. Docket No. 70 at p. 36. There is no question that FDSC promoted the brand and obtained clientele for Innovair products in Puerto Rico since the year 2012. Roger Electric was also a client of FDSC and FDSC's sales to Roger Electric added up to 60% of FDSC's total annual sales. Docket No. 65 at p. 13. Innovair changed FDSC's historical compensation structure and bypassed FDSC by selling directly to Roger Electric. Certainly, Law 75 was not intended as a free pass to "gradually reduce and impair the extent of [a] previously established relationship[], as soon as [FDSC] created a favorable market and without taking into account [FDSC's] legitimate interests." Beatty Caribbean, 2009 WL 2151303, at *17 (quoting Statement of Motives of Act 75, 1964 P.R. Laws, 4th Reg. Sess. 231). But it is not less true that FDSC is not likely to establish an exclusive right to distribute Innovair products in Puerto Rico. Innovair would thus be entitled to name additional distributors and sell directly to any customers in Puerto Rico. Because issuing the requested injunctive relief would allow FDSC to control the prices offered to Roger Electric, such an injunctive relief would limit Innovair's ability to compete for Roger Electric's business. It would also force upon Innovair an exclusivity as it relates to Roger Electric. Medina & Medina, 840 F.3d at 41-42 (Law 75 does not transform non-exclusive distribution relationships into exclusive ones); E. Moran, 2023 WL 3194682, at *4 (same). This factor weighs against granting injunctive relief.

### III.     Conclusion

While FDSC may be able to succeed in one of its impairment claims, relief as to that claim appears to be intertwined with FDSC's claimed exclusivity. The rest of the factors in the preliminary injunction analysis weigh against the requested relief. For those reasons, the undersigned recommends that FDSC's motion for preliminary injunction at Docket No. 65 be **DENIED**.

Innovair Corp. v. Factory Direct Sales Corp.
Case No. 23-1079 (GMM)
Report and Recommendation

      This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have fourteen (14) days to file any objections to this Report and Recommendation. Failure to file timely and specific objections within the specified time may be deemed waived by the District Court and claims not preserved by objections may be precluded on appeal. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health and Human Services, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 30th day of July 2024.

                                             s/Giselle López-Soler
                                             GISELLE LÓPEZ-SOLER
                                             United States Magistrate Judge